UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| SOCIAL POSITIONING SYSTEMS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 8:22-cv-00036-KKM-SPF |
| CLICK LABS INC., | § § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § § § | |

**CLICK LABS INC.'s RULE 12(b)(6) MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

## **TABLE OF CONTENTS**

I.  NATURE AND STAGE OF PROCEEDINGS.....................................................1

II.  SUMMARY OF THE ARGUMENT....................................................................1

III.  STATEMENT OF THE FACTS.........................................................................3

IV.  ARGUMENT........................................................................................................6

    A.  Legal Standard ........................................................................................6

        1.  This Case Should Be Disposed of at the Pleading
            Stage Through Rule 12(b)(6) .......................................................6

        2.  The Law of Section 101........................................................................7

    B.  The Claims of '365 Patent are Ineligible Under § 101 ......................8

        1.  *Alice* Step 1: The claims are directed to an abstract
            idea ............................................................................................8

            a.  The '365 Patent is directed to the abstract
                idea of sharing address information ..............................8

            b.  Courts have found similar claims to be
                directed to patent-ineligible subject matter.................12

        2.  *Alice* Step 2: The claims do not contain an inventive
            concept amounting to significantly more than the
            abstract idea ..............................................................................14

        3.  The remaining claims are also abstract ....................................18

V.  CONCLUSION....................................................................................................19

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
   838 F.3d 1253 (Fed. Cir. 2016)...................................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ....................................................................... *Passim*

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..............................................................................6

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
   687 F.3d 1266 (Fed. Cir. 2012)...........................................................6, 17

*Berkheimer v. HP Inc.,*
   881 F.3d 1360 (Fed. Cir. 2018)................................................................17

*Bilski v. Kappos,*
   561 U.S. 593 (2010) .........................................................................6, 7, 8

*buySAFE, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014)................................................................17

*Content Extraction and Transmission LLC v. Wells Fargo Bank,*
   *Nat'l Ass'n,* 776 F.3d 1343 (Fed. Cir. 2014)............................................9

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014)................................................................11

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980) ...............................................................................7

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016)................................................................11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings,*
   955 F.3d 1317 (Fed. Cir. 2020)....................................................12, 13, 14

*Gottschalk v. Benson,*
 409 U.S. 63 (1972) ...................................................................................7

*In re TLI Commc'ns LLC Patent Litig.,*
 823 F.3d 607 (Fed. Cir. 2016)...................................................2, 15, 16

*Intellectual Ventures I LL v. Capital One Bank U.S.A.,*
 792 F.3d 1363 (Fed. Cir. 2015).............................................................17

*Internet Patents Corp. v. Active Network, Inc.,*
 790 F.3d 1343 (Fed. Cir. 2015)...............................................10, 12, 19

*Joao Control & Monitoring Sys., LLC v. Telular Corp.,*
 173 F. Supp. 3d 717, 726, WL 1151052 (N.D. Ill. 2016)......................13

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,*
 66 F. Supp. 3d 829 (E.D. Tex. 2014) ....................................................12

*MacroPoint, LLC v. FourKites, Inc.,* No. 15–cv–1002,
 WL 6870118, at (N.D. Ohio Nov. 6, 2015), *aff'd,* 671 Fed. Appx. 780 ...............13

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.,*
 No. 2:16-cv-152-JRG-RSP,  WL 1065938
 (E.D. Tex. Mar. 8, 2017) .........................................................................9

*Rothschild Location Techs. LLC v. Geotab USA, Inc.,*
 No. 6:15-CV-682-RWS-JDL, WL 2847975
 (E.D. Tex. May 16, 2016) ................................................................3, 16

*Simpson v. Sanderson Farms, Inc.,*
 744 F.3d 702 (11th Cir. 2014)..................................................................6

*Solis-Ramirez ex rel Solis v. United States Dep't of Justice,*
 758 F.2d 1426 (11th Cir. 1985) ...............................................................6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
 874 F.3d 1329 (Fed. Cir. 2017).......................................................14, 17

iv

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ...................................................................... 6, 10, 15

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015) ................................................................ *Passim*

## **Statutes:**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 6, 8

35 U.S.C. § 101 ....................................................................................................... *Passim*

## I.    NATURE AND STAGE OF PROCEEDINGS

On January 4, 2022, Social Positioning Input Systems, LLC ("Social Positioning") filed this lawsuit accusing Defendant Click Labs Inc. ("Click Labs") of infringing "at least Claim 1" of U.S. Patent No. 9,261,365 ("'365 Patent").[1]  In particular, Social Positioning accuses Click Lab's asset tracking platform, and any associated hardware, apps, or other software, of infringement.

## II.    SUMMARY OF THE ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Click Labs requests that the Court grant its motion and dismiss this case with prejudice because the claims of the '365 Patent are ineligible under 35 U.S.C. § 101. The '365 Patent claims fail *Alice* step one because they are directed to the abstract and unpatentable idea of sharing address information and purport to accomplish this abstract idea by merely sending and receiving data. *See, e.g., Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015) (finding similar claims directed to the abstract idea of "monitoring **locations**, movement, and load status of shipping containers within a container-receiving

---

[1] The '365 Patent is attached to the Complaint at Doc. 1-1

yard, and storing, reporting and **communicating this information** in various forms through generic computer functions") (emphasis added).

The claims of the '365 Patent fail *Alice* step two because they involve "the use of conventional or generic technology in a nascent but well-known environment," without claiming or disclosing any particular nonconventional components or programming, let alone any technological improvement or inventive way of applying conventional technology. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612, 614 (Fed. Cir. 2016) ("[H]ere we need to only look to the specification, which describes the [components] as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art."). Social Positioning's patent merely describes the basic idea of sharing information related to addresses without disclosing any inventive application of that idea. Social Positioning's claims are thus ineligible under both *Alice* steps.

That the claims of the '365 Patent are directed to ineligible subject matter is reinforced when considering prior litigation relating to the parent of the '365 Patent, U.S. Patent No. 8,606,503 ("'503 Patent"),[2] the claims of which were also

---

[2] The '365 Patent is a continuation of the '503 Patent, which is attached at Exhibit A. Shortly after the claims of the '503 Patent were held ineligible, Rothschild Location Technologies, LLC assigned the '365 Patent to Rothschild Vehicle Technologies, which assigned the patent to Geographic

held ineligible under § 101. *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-CV-682-RWS-JDL, 2016 WL 2847975 (E.D. Tex. May 16, 2016). The '503 Patent claims purported to "retrieve an address that is electronically stored in a second GPS device, often in an incompatible format, and to have the address entered into the user's GPS device without having to manually enter it, regardless of formatting incompatibilities between the devices." *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-CV-682-RWS-JDL, 2016 WL 2847975, at *2 (E.D. Tex. May 16, 2016). The court determined that the '503 Patent claims were directed to the abstract idea of "address retrieval," and because the claims recited the use of conventional components, such as a GPS device, to perform generic computer tasks (i.e., "receiving" a request, "determining" an identifier, "retrieving" an address, and "transmitting" the address), the court determined that they also failed *Alice*'s second step: "the claimed invention does not contain an inventive concept that transforms the claims into patent-eligible subject matter." *Id.*, *3. The claims of the '365 Patent cannot be meaningfully distinguished from those held ineligible in *Rothschild Location*.

### III.   <u>STATEMENT OF THE FACTS</u>

---

Location Innovations, LLC. Geographic Location Innovations, LLC assigned the '365 Patent to Social Positioning in 2020. Since 2020, upon information and belief, Social Positioning has filed over 60 cases against defendants alleging infringement of the '365 Patent.

The '365 Patent, entitled "Device, system and method for remotely entering, storing and sharing addresses for a positional information device," issued on February 16, 2016, from an application filed on September 9, 2009. The applicant contends to have identified and solved problems associated with GPS devices, which store addresses locally. '365 Patent, 1:46-2:25. The patent, however, merely implements an abstract idea using conventional components and communication systems that were known in the prior art.

Representative claim 1 recites a method for sharing addresses between two devices (i.e., a requesting positional information device and a sending positional information device[3]):

> 1.   A method for receiving location information at a positional information device, the method comprising:
>
> > sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device;
> >
> > receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional

---

[3] A GPS device is an example of a positional information device. '365 Patent, Abstract ("a positional information device, **e.g., a global positioning system (GPS) device**) (emphasis added).

information device.

*Id.*, cl. 1. Methods for sharing addresses with GPS devices are generically described in the specification. *Id.*, 8:23-34 ("system and method for remotely entering, storing and **sharing location address information** will be described") (emphasis added). The embodiments described in the specification center on sharing address information. *See id.*, 9:29-32 ("[i]n one embodiment, the customer service center includes a live operator 303 that has access to server 304 for **looking up address information and transmitting the information to the device**") (emphasis added). The specification also describes a situation in which "[a] driver of a vehicle needs assistance in locating a point of interest such as a museum in a designated city." *Id.*, 12:27-28.

Claim 1 recites a generic technique to establish a communications link between one or more devices and transfer information in which no technical details are disclosed, much less claimed, as to how these processes are accomplished. In particular, in claim 1, a requesting positional information device "send[s] a request . . . for at least one address" to a server. The request includes "a first identifier" for identifying the requesting positional information device. The server obtains the requested address from a "sending positional information device." The sending positional information device is identified by a "second identifier." No further technical details are provided on how information is shared

beyond what was known in the prior art.

## IV.   <u>ARGUMENT</u>

### A.   **Legal Standard**

#### 1.   **This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6**)

To survive a Rule 12(b)(6) motion, a complaint "must present sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Solis-Ramirez ex rel Solis v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). Although factual allegations are taken as true, legal conclusions are given no deference, and are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions").

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims

6

are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.  The Law of Section 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court

evaluates whether there is "an 'inventive concept' — *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

### B.       The Claims of the '365 Patent are Ineligible Under § 101

Social Positioning's Complaint should be dismissed. The claims of the '365 Patent are ineligible under § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of sharing address information. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Social Positioning has failed to state a claim upon which relief may be granted, Click Labs respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

### 1.       *Alice* Step 1: The claims are directed to an abstract idea

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '365 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine,"

and "conventional" concept of sharing address information. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.

> a) **The '365 Patent is directed to the abstract idea of sharing address information**.

Representative claim 1 of the '365 Patent is directed to the abstract idea of sharing address information.[4] Stripped of its generic terminology, such as "a positional information device," the claim conceivably could cover any generic process of sharing address information. This is especially true given the purely functional nature of the claim language. For example, claim 1 could cover the following scenario: (1) requesting an address from another device via a server (*e.g.*, calling Alice to ask for Bob's address); and then (2) receiving address information from the other device via the server (*e.g.*, Alice providing Bob's address):

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for receiving location information at a positional information device, the method comprising: | |

---

[4] Asserted Claim 1 of the '365 Patent is representative of all claims. *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

| | |
|---|---|
| sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device; | Requesting address information

(calling Alice to ask for Bob's address) |
| receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device. | Receiving address information

(receiving Bob's address from Alice) |

Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

Furthermore, the applicant's purported invention is not limited to any particular implementation. '365 Patent, 4:16-19 ("it is to be understood the principles of the present disclosure may be applied to any type of navigation or positional information device …."); *id.*, 9:25-29 ("Once connected to the customer service center, the user can communicate with the customer service center with voice communications or with a vehicle user interface (VUI) including but **not limited** to keyboard, voice recognition, or mouse or pointer") (emphasis added)). The specification, coupled with the broad functional language in claim 1, confirms that Social Positioning's claims do not describe how to implement the allegedly

10

claimed system, much less how to do so in any non-conventional manner. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation").

Additionally, the applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in the claims of the '365 Patent shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." *Id.* The focus of the '365 Patent claims is not "on [a] specific asserted improvement in

11

computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," *id.* at 1336, but rather on sharing address information between two devices.

By only claiming the desired result in a functional manner (i.e., requesting and receiving address information), claim 1 of the '365 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (holding that claims were directed to an abstract idea where they claimed "the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function"). And because the claimed methods and systems are to be implemented without the use of any specialized hardware or software components, the '365 Patent risks preempting *all* automated methods or systems for sharing address information. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective").

### b) Courts have found similar claims to be directed to patent-ineligible subject matter.

Courts have found similar patent claims to be directed to abstract ideas.

Recently, the Federal Circuit held that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). The claims here are directed to the request and receipt of address information, and are thus similar to the claims at issue in *Ericsson*, in that these are precisely the types of activities that can be performed by a human without computers. For instance, a party could call a first friend and ask for a second friend's address. The first friend may retrieve the address, and then provide it the requesting party. Because this process can be performed by a human, the claims of the '365 Patent are invalid under the same rationale expressed by the Federal Circuit in *Ericsson*.

Furthermore, patents related to location information have been found to be directed to the abstract idea of monitoring and communicating information. In *Wireless Media Innovations*, for example, the court invalidated two patents for a system and method of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." 100 F. Supp. 3d 405, 413 (D.N.J. 2015). This was an abstract idea, according to the court, because these general monitoring and recording functions "could be carried out by human memory, by hand, or by conventional equipment

13

and general purpose computer and printer resources." *Id.* at 415; *see also Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 726, 2017 WL 1151052 (N.D. Ill. 2016) (claims found to be "directed to the abstract idea of monitoring and controlling property and communicating this information through generic computer functions"); *MacroPoint, LLC v. FourKites, Inc.*, No. 15–cv–1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015), *aff'd*, 671 Fed. Appx. 780 ("directed to the abstract idea of tracking freight").

Claim 1 describes a common human activity that can be performed without a computer or specialized equipment (e.g., calling Alice to ask for Bob's address and then Alice providing Bob's address). Claim 1 does not include any specific limitations or steps regarding a "specific structure" of computer components used to carry out the abstract idea of sharing address information. Rather, claim 1 uses results-based functional language like "sending a request from a requesting positional information device to a server" and "receiving at the requesting positional information device, from the server, a retrieved at least one address"'365 Patent, cl. 1. Claim 1 is abstract because it does "not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (holding limitations requiring "sending" and "directing" of information "d[id] not sufficiently describe how to achieve these results in a non-abstract way"). Claim 1 cannot be meaningfully distinguished from the claims in

14

either *Ericsson*, *Two-Way Media*, or *Wireless Media Innovations*.

### 2. *Alice* Step 2: The claims do not contain an inventive concept amounting to significantly more than the abstract idea.

Because claim 1 is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '365 Patent is to provide for "remotely entering, storing and sharing location addresses," '365 Patent, 2:47-48, not a single technical improvement is disclosed, much less claimed. Instead, claim 1 is described only at a high level, consisting of generic functional language like "sending a request" and "receiving . . . at least one address." And, according to the specification, no specialized hardware or software is needed to send and receive address information. *Id.*, 8:23; 12:5.

While the specification purports to describe the structure of an embedded system capable of sharing address information, nothing in either claim 1 or the specification discloses how the "positional information device" must be

15

configured in any manner, much less an inventive one. Instead, the claim limitations simply list generic hardware without any improvement in technology. *See In re TLI*, 87 F. Supp. 3d 773, 794 (holding that a "telephone unit limitation is another example of **generic hardware** which does not save Claim 17 because it is **not inventive**") (emphasis added). And the specification fares no better, as the invention is described as "a system and method of programming GPS units from a link on the Global Computer Network (e.g., the Internet) is also provided." '365 Patent at 2:49-51. GPS units and the Internet are not novel. *See Rothschild,* WL 3584195, at *5, 7 ("A GPS device is a well-known generic computer element insufficient to make otherwise patent ineligible subject matter patentable"). Further details are neither claimed nor disclosed.

There is simply nothing "inventive" about using known processes (e.g., the Internet and/or wireless networks) to retrieve address information. *See* '365 Patent, 9:38-46 (the invention is "described in the context of the GSM mobile telecommunications standard" but may "relate[] to all telephone standards including, and not limited to CDMA and US-TDMA"). Moreover, the abstract functional descriptions in claim 1 are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional

16

descriptions devoid of technical explanation as to how to implement the invention"). Nothing in claim 1 requires any inventive algorithm or data structure, much less an improved computer component. *See Wireless Media Innovations,* 100 F. Supp. 3d 405, 416-417 ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").

Courts have repeatedly held that the presence of generic hardware and processing like the kind recited in claim 1 of the '365 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g., buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Two-Way Media,* 874 F.3d at 1339 (finding no inventive concept when "[n]othing in the claims . . . requires anything other than conventional computer and network components operating according to their ordinary functions"); *Wireless Media Innovations,* 100 F. Supp. 3d 405, 416 (finding that the asserted claims "are not tied to any particular novel machine or apparatus, only a general purpose computer, general communication devices, and general vehicles," and the "specific system elements . . . merely require generic computer functions that are not inventive."); *see also Bancorp,* 687 F.3d at 1276-77. In addition, an "abstract

17

idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [GPS devices]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner. The claims therefore fail *Alice*'s second step because they contain no inventive features, and no amount of fact discovery can change that.

### 3. The remaining claims are also abstract.

The remaining claims of the '365 Patent relate to the same abstract concept

18

of sharing address information by sending and receiving information. The only differences are immaterial in the context of a § 101 analysis. For example, claim 8 adds only conventional components and broad functional language, for e.g., "a location information module for determining location information of the requesting positional information device." Claim 8 is therefore directed to the same abstract idea, and there is nothing that adds significantly more to transform the ineligible concept. *Alice*, 134 S. Ct. at 2355-2357. The dependent claims relate to (i) identifying information (dependent claims 2, 6, 9, and 13), (ii) type of information (dependent claims 3 and 10), and (iii) source and display of information (dependent claims 4, 5, 7, 11, 12, 14, and 15). But claiming variations related to the type and source of information is not inventive. So too is the claims' identification of additional generic components—particularly because there is no disclosure of how any of the generic components (e.g., telematics network) must be configured in any "inventive" manner to accomplish the desired results. *See Internet Patents*, 790 F.3d at 1348.

None of these additional features amounts to an inventive feature or renders the claims any less abstract. Regardless of their form, therefore, all of the claims of the '365 Patent fail both prongs of *Alice* because they are directed to an abstract idea and recite no inventive concept. *Alice*, 134 S. Ct. at 2355, 2357.

## V.   **CONCLUSION**

For the foregoing reasons, Click Labs respectfully requests that the Court dismiss Social Positioning's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Click Labs requests dismissal with prejudice.

Dated:  March 31, 2022                    Respectfully submitted,

*/s/ John J. Gagliano*
John J. Gagliano
john@gagliano.law
Florida Bar No. 87379
GAGLIANO LAW OFFICES
433 Plaza Real Suite 275
Boca Raton, FL 33432
Telephone No. (561) 765-6170
Facsimile No. (215) 554-6979

*/s/ Bradley D. Liddle*
Bradley D. Liddle (*pro h*ac)
Texas Bar No. 24074599
bliddle@carterarnett.com
Theresa M. Dawson (*pro hac*)
tdawson@carterarnett
Texas Bar No. 24065128
Carter Arnett PLLC
8150 N. Central Expy, Ste. 500
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214)550-8185

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically and served by operation of the Court's electronic filing system on March 31, 2022. Parties may access the foregoing through the Court's system.

 */s/ John J. Gagliano*
John J. Gagliano